IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ICON HEALTH & FITNESS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RELAX-A-CIZOR PRODUCTS, INC.,<br>D/B/A THE STICK/RPI OF ATLANTA<br><br>Defendant. | Case No. 1:12-CV-00017-SA<br><br>**MEMORANDUM ORDER AND DECISION**<br><br>Magistrate Judge Samuel Alba |

Before the court is Defendant's Motion to Dismiss (Doc. 4). Having carefully reviewed the pleadings and having heard oral argument in this matter, the court orders that Defendant's Motion be DENIED pending limited jurisdictional discovery.

## ANALYSIS

### A. SUBJECT MATTER JURISDICTION

Defendant Relax-a-cizor Products, Inc. ("RPI") argues that the court lacks subject matter jurisdiction because there is no sufficient controversy for the Declaratory Judgment Act ("DJA") to apply.[1] Def's Memorandum in Support of Mot. To Dismiss 2 (Doc. 5).

There are "two separate hurdles for parties seeking a declaratory judgment to overcome," a Constitutional one and a discretionary one. *Surefoot LC v. Sure Foot*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, the DJA requires an "actual controversy," analogous to the Constitution's

---

[1] RPI also argues that the controversy has not been sufficiently pleaded under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). But as RPI only seeks dismissal under Fed. R. Civ. Pro. 12(b)(1) (subject matter jurisdiction), 12(b)(2) (personal jurisdiction), and 12(b)(3) (venue), and not 12(b)(6) (failure to state a claim), *see* Def.'s Motion to Dismiss 2 (Doc. 4), the court considers RPI's pleading-standard argument subsumed in its subject-matter-jurisdiction argument.

"case or controversy" requirement. *Id.* In determining whether a controversy exists under the DJA, the Supreme Court has explained that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Second, if it determines that a substantial controversy exists under *MedImmune*, the court "'may' -- not 'must' -- make a declaration on the merits of that controversy; accordingly, [the Tenth Circuit has] held that district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Surefoot*, 531 F.3d at 1240.

The pleadings establish that this case came about after RPI sent a cease-and-desist letter to Gold's Gym regarding a product manufactured and sold by ICON Health & Fitness, Inc. ("ICON") under license from Gold's Gym. Pl.'s Opposition to Def.'s Motion to Dismiss 6-8 (Doc. 13). The letter claims that RPI holds a trademark for "The Stick," instructs Gold's Gym to "cease and desist usage of the mark MASSAGE STICK in connection with massage devices within the United States," and clearly contemplates legal action should they fail to do so. *See* RPI's Cease-and-Desist Letter (Doc. 13-1). Though the parties do not agree on whether RPI knew, or should have known, that its letter to Gold's Gym implicated ICON's legal interests, *compare* Declaration of Pat E. Belcher 4 (Doc. 5-1)(claiming that RPI had no knowledge of ICON prior to the present lawsuit) *with* Pl.'s Exhibit 1 (Doc. 14-1) (photographs of packaging) (showing ICON's name on the packaging of the Accused Product), the court does not find this factual issue dispositive on the question of subject matter jurisdiction. Similarly, the court is not

swayed by RPI's assertion that it *could* sue Gold's Gym individually, without a trademark infringement suit against ICON. Doc. 18 at 3.

A controversy under the DJA is not premised on "a judicial wager on the chances the parties will (imminently or otherwise) sue one another; rather, it has always focused on the underlying facts, assessing whether they suggest an extant controversy between the parties." *Surefoot*, 531 F.3d at 1242. In this case, RPI's letter, combined with ICON's allegations that ICON actually manufactures the Accused Product, that ICON uses the word 'stick' in its advertising of the Accused Product, and that ICON's use of the word 'stick' does not infringe RPI's Trademark, Pl.'s Complaint 4 (Doc. 2), are sufficient to suggest an extant controversy between the parties. Accordingly, the court finds that the facts alleged show a substantial controversy to satisfy the requirements of the DJA, and that the controversy was sufficiently pleaded.

Having so determined, the court moves on to the discretionary portion of the analysis. Here, the Tenth Circuit has pointed out five non-exclusive factors to consider: "(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Marlin Oil Corp. v. Lurie*, 417 Fed. Appx. 740, 745 (10th Cir. 2011) (unpublished) (*quoting State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

Here, declaratory judgment would settle the trademark controversy identified above and clarify the legal relations at issue. As far as "procedural fencing," in cases where this factor is dispositive, there is typically some sort of bad faith involved. *See* D. Peter Harvey and Seth I. Appel, *The Declaratory Judgment Response to a Cease and Desist Letter: "First-to-File" or "Procedural Fencing"?*, 96 THE TRADEMARK REPORTER 639, 657 (2006) ("Procedural Fencing . . . often involves bad faith."); *see e.g., Buzas Baseball, Inc. v. Board of Regents*, 1999 U.S. App. LEXIS 21630, 5 (10th Cir. 1999) (unpublished) (pointing out that declaratory judgment plaintiff filed action while ostensibly continuing settlement negotiations); *Plymouth Press v. Klutz, Inc.*, 1997 U.S. Dist. LEXIS 12185, *5-6 (E.D. Mich. 1997)("The critical issue appears to be whether the plaintiff in the earlier-filed declaratory action misled the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse."). In this case, there is no indication of bad faith or a race to the courthouse. The court therefore finds that the third factor does not counsel against issuance of a declaratory judgment. Nor would this case "improperly encroach on state jurisdiction," as the underlying law is federal trademark law. Finally, the court is not aware of an alternate remedy in this case which would be "better or more effective." Therefore, the court exercises its discretion to accept the case for declaratory judgment.

B. PERSONAL JURISDICTION

RPI also claims that the court does not have personal jurisdiction, because RPI lacks the necessary minimum contacts with Utah. Doc. 5 at 2.

To meet its initial burden of establishing personal jurisdiction, "the plaintiff must only make a prima facie showing." *Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060, 1065 (10th Cir. 2007). "The plaintiff may meet this burden by demonstrating, via affidavit or other written materials,

facts that if true would support jurisdiction over the defendant." *Id.* (internal quotation marks and citation omitted). Factual disputes are resolved in favor of the plaintiff. *See TH Agric. &Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007).

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). As the applicable federal statutes in this case do not confer jurisdiction, the court must look to the state's long-arm statute. *See id*; Fed. R. Civ. Pro. 4(k)(1)(A). Where the long-arm statute confers the maximum jurisdiction allowable under constitutional due process, *see* Utah Code Ann. § 78B-3-201 (2012); *accord Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp.2d 1093, 1097 (D. Utah 2003), the whole analysis is compressed into the second prong, *see id.*; *Melea*, 511 F.3d at 1065. Thus, the court next addresses whether the exercise of jurisdiction over RPI comports with due process.

In examining due process, the court will "conduct a two-step analysis." *Melea*, 511 F.3d at 1065.

> At the first step, [the court] examine[s] whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there. If the defendant has sufficient contacts, [the court] then proceed[s] to the second step. At this step, [the court] ask[s] whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,' that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances."

*Id.* at 1065-66 (internal quotations marks and citations omitted).

These "minimum contacts" "may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of

5

particular forum-related activities." *Shrader v. Bigginger*, 633 F.3d 1235, 1239 (10th Cir. 2011). General jurisdiction requires the defendant to have made "continuous and systematic" contacts with the forum state. *Id*. Specific jurisdiction requires that an out-of-state defendant has "purposefully direct[ed]" its activities at the forum state and that the litigation in question arose out of those activities. *Id*.

General jurisdiction, compared to specific jurisdiction, requires a greater threshold of contacts between the defendant and the forum state. *See* 16-108 Moore's Federal Practice - Civil§108.40 (2011) ("The distinction between general and specific jurisdiction is significant because, as the Supreme Court made clear . . . the threshold of contacts for satisfying the minimum contacts requirement . . . is higher in general than in specific jurisdiction cases.") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).

RPI's admissions and ICON's allegations, taken as true, establish that: (1) the lawsuit was triggered by a cease-and-desist letter which RPI mailed to Gold's Gym in Texas, concerning a product manufactured and marketed by ICON, Doc. 13 6-8, (2) RPI distributes its product in Utah both through an interactive website and through approximately fifteen separate businesses in the state, Doc. 13 at 19, and (3) RPI generated around 1.4% of its revenue from 2000 to 2011 from Utah customers, Doc. 5 at 10.

The Tenth Circuit has found that a notice of copyright infringement, roughly analogous to the cease-and-desist letter in this case, can be conduct triggering specific jurisdiction analysis, even when the notice was sent to a third-party distributor in another state and not to the declaratory judgment plaintiff. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1075 (10th Cir. 2008). In that case, the court found that the defendant sent a notice to California with the "express aim" of affecting the plaintiffs' business in Colorado, and therefore the

defendant fell under the specific jurisdiction analysis of *Calder v. Jones*, 465 U.S. 783 (1984). *Dudnikov*, 514 F.3d at 1071-1080.

However, based on the limited factual material before it, and ICON's understandably limited ability to allege RPI's intentions, the court is uncomfortable finding that the cease-and-desist letter in this case triggers specific jurisdiction analysis. Similarly, the court cannot determine, at this time, that 1.4% of RPI's revenue or RPI's unspecified relationships with Utah distributors adequately demonstrates the 'continuous and systematic' conduct necessary for general jurisdiction to attach.

ICON has requested limited jurisdictional discovery, Doc. 13 at 23, and the court has broad discretion to allow it in this situation. *See Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). The court therefore gives ICON leave for limited jurisdictional discovery on the following issues: the number of products that RPI sells in Utah and the amount of revenue it makes from those sales; the duration and nature of RPI's business relationships with Utah distributors; and, to the extent possible, the knowledge and intentions of RPI's agents in deciding to send the cease-and-desist letter to Gold's Gym in Texas. The court grants ICON leave to propound up to five interrogatories on RPI and to conduct up to two depositions, each no longer than three hours. Thereafter, the parties may resubmit memoranda prior to the court's decision on personal jurisdiction.

C. VENUE

RPI also contests venue. Doc. 5 at 2. A determination of proper venue cannot precede the personal jurisdiction analysis. *See* 28 U.S.C. 1391(b)(1), (c)(2) (explaining that venue is proper in any judicial district where a defendant resides, and that business entities are deemed to

reside in any district where they are subject to personal jurisdiction). The court therefore reserves the question of venue until it makes a decision regarding personal jurisdiction.

## CONCLUSION

Based on the above analysis, it is hereby ordered that Defendant RPI's Motion to Dismiss (Doc. 4) be **DENIED** pending limited jurisdictional discovery. ICON may propound up to five interrogatories on RPI and conduct up to two depositions, each no longer than three hours. ICON must issue any interrogatories within ten days of this order. Depositions must be completed within forty-five days of this order.

DATED this 4th day of May, 2012.

BY THE COURT:

SAMUEL ALBA
United States Magistrate Judge