IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ICON HEALTH AND FITNESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RELAX-A-CIZOR PRODUCTS, INC., D/B/A THE STICK/RPI OF ATLANTA, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No.  1:12-cv-00017-EJF <br><br> Magistrate Judge Evelyn J. Furse |

Defendant Relax-A-Cizor Products, Inc. ("RPI") originally filed a Motion to Dismiss on February 22, 2012, under Fed. R. Civ. P. 12(b)(1), (2), and (3) for lack of subject-matter jurisdiction, lack of personal jurisdiction, and improper venue.[1]  (ECF No. 4.)   Then-Magistrate Judge Samuel Alba found this Court's exercise of subject-matter jurisdiction over this declaratory judgment action proper but deferred ruling on personal jurisdiction and venue pending limited jurisdictional discovery.[2]  (ECF No. 20.)  Having conducted some discovery, RPI now renews its Motion to Dismiss for lack of personal jurisdiction and improper venue.[3] (ECF No. 28.)  The Court has carefully read the parties' memoranda for and against RPI's Motion and finds that it can decide the Motion without oral argument.  *See* DUCivR 7-1(f).

---

[1] The parties consented to the exercise of jurisdiction by a Magistrate Judge under 28 U.S.C. section 636(c).  (ECF No. 12.)

[2] Judge Alba subsequently retired from the bench, and this case was transferred to the undersigned Magistrate Judge on May 21, 2012.  (ECF No. 22.)

[3] RPI invites this Court to reconsider its previous ruling on subject-matter jurisdiction but provides no basis for disturbing this Court's prior decision.  (Mem. Supp. 2 n.1, ECF No. 29.)  Accordingly, the Court declines to reconsider its prior ruling on subject-matter jurisdiction.  *See Ekotek Site PRP Comm. v. Self*, 932 F. Supp. 1319, 1322 (D. Utah 1996) (setting forth grounds justifying reconsideration).

The record before the Court demonstrates RPI maintains continuing and systematic contacts with Utah through trade shows and close control over its Utah distributors, among other direct contacts with Utah. RPI fails to show why the exercise of personal jurisdiction by this Court would not comport with traditional notions of fair play and substantial justice given these minimum contacts. Accordingly, the Court finds it properly may exercise personal jurisdiction over RPI and therefore DENIES RPI's Motion to Dismiss (ECF No. 28).

## DISCUSSION

### A. Personal Jurisdiction

As the Plaintiff, ICON Health and Fitness, Inc. ("ICON") "bears the burden of establishing personal jurisdiction over the defendant." *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quotation omitted). To meet this burden here, ICON need only make a prima facie showing of personal jurisdiction. *Id.* (citation omitted). The Court takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of the Plaintiff. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted).

A federal court considering whether it has personal jurisdiction over a defendant must determine "'(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The applicable federal statutes do not confer jurisdiction; thus, Federal Rule of Civil Procedure 4(k)(1)(A) refers the Court to Utah's long-arm statute. *See Dudnikov*, 514 F.3d at 1070. Because Utah's long-arm statute confers the maximum jurisdiction allowed by due process of law, *see Synergetics v.*

*Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985), "the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070. Thus, the Court turns directly to whether the exercise of jurisdiction over RPI comports with due process.

**1. Minimum Contacts**

For jurisdiction over a nonresident defendant not to offend due process, "minimum contacts between the defendant and the forum State" must exist. *Trujillo*, 465 F.3d at 1217–18 (quoting *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). If the court finds it has either specific or general jurisdiction over the defendant, the case satisfies the "minimum contacts" standard. A court may assert specific jurisdiction over a defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotations omitted). A court may assert general jurisdiction over a defendant "based on the defendant's general business contacts with the forum state." *OMI Holdings v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)). "[B]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (internal quotation marks omitted).

### *i. Specific Jurisdiction*

In deciding whether a defendant has minimum contacts sufficient to create specific jurisdiction, courts apply a two-part test. "[F]irst . . . the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second . . . the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).

In *Dudnikov*, the Tenth Circuit found the mailing of a notice of copyright infringement to California sufficient to justify a specific jurisdiction analysis for a case in the District of Colorado where the defendant intended the notice at issue, although mailed to California, to affect a Colorado seller. *See id.* at 1071–80. In finding the defendant had purposefully directed its activities at the forum state—Colorado—the Tenth Circuit cited the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), and relied on its findings that the defendant acted: (1) intentionally, (2) with express focus on Colorado, and (3) with knowledge that a resident of Colorado would feel the injury primarily. *See id.* at 1072–78 (citation omitted).

The Tenth Circuit has declined to decide whether *Calder*'s effects test requires the "jurisdictionally relevant effects [to] have been caused by wrongful acts," *see id.* at 1073, and other Circuits have taken opposing views, *compare Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (*en banc*) (holding that *Calder* cannot logically require wrongfulness), *with Marten v. Godwin,* 499 F.3d 290, 297 (3d Cir. 2007) (holding that *Calder* requires an intentional tort). Nonetheless, in at least two cases where the Tenth Circuit discussed specific jurisdiction under *Calder*, it found the plaintiffs complied with any wrongfulness requirement *Calder* might contain, thereby obviating the need to decide explicitly whether a plaintiff must plead wrongfulness. *See Dudnikov*, 514 F.3d at 1073

(declining to decide whether *Calder* requires "wrongful" intentional conduct because plaintiff alleged wrongfulness); *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 97 (10th Cir. 2012) (same).

Here, ICON does not allege wrongful activity as alleged in *Dudnikov*. Rather, ICON asks the Court to infer wrongfulness from post-filing acts. The Court finds this leap too great, and, as set forth below, unnecessary. Regardless of whether the intentional act must be wrongful, ICON has not satisfied *Calder*'s other requirements.

This Court's earlier ruling on personal jurisdiction granted ICON leave to conduct jurisdictional discovery on a number of narrow topics, including "the knowledge and intentions of RPI's agents in deciding to send the cease-and-desist letter to Gold's Gym in Texas." (ECF No. 20.) In its response to RPI's Motion to Dismiss, ICON has not presented sufficient new facts to support a finding of specific jurisdiction in accord with *Dudnikov*/*Calder*. Instead, ICON points out the deficiency of RPI's discovery responses and invites the Court to base a finding of specific jurisdiction on a number of adverse inferences. The Court will infer RPI knew ICON made the product, but whether RPI knew ICON or Gold's made the packaging remains unclear. The product's packaging reads, in pertinent part: "Manufactured and distributed under license from Gold's Gym Merchandizing LLC. Gold's Gym and the Gold's Gym logo are registered trademarks of Gold's Gym Licensing LLC. © 2011 ICON Health & Fitness, Inc. All rights reserved." (Decl. of Jon D. Layton, Ex. 2, Mar. 26, 2012, ECF No. 14.) These allegations alone do not allow this Court to infer RPI intentionally directed its acts at Utah. The analysis under *Dudnikov* and *Calder* thus cannot establish specific jurisdiction under the facts presented to the Court at this time, even with the Court considering the disputed facts in ICON's favor and requiring only a prima facie showing.

*ii. General Jurisdiction*

In the absence of specific jurisdiction, a plaintiff can attempt to assert general jurisdiction. For a court properly to find it has general jurisdiction over an out-of-state defendant, the court must find greater contacts with the forum state than those required for specific jurisdiction. *Kuenzle*, 102 F.3d at 458 (citation omitted). In considering whether a defendant's contacts with the forum suffice to create general jurisdiction, the Tenth Circuit has considered the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Id.* at 457 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996)). This list is non-exhaustive. *See Trierweiler*, 90 F.3d at 1533 ("In assessing contacts with a forum, courts have considered *such factors as* . . .") (emphasis added) (citation omitted); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1193 (D. Colo. 1999) (citation omitted) ("[T]he *Trierweiler* factors are neither exhaustive nor necessarily determinative of the general personal jurisdiction inquiry."). The Court ultimately focuses on whether the Defendant has "continuous and systematic" contacts with the forum state to justify general jurisdiction. *See Helicopteros*, 466 U.S. at 416.

The record presently before the Court reveals the following contacts between RPI and Utah: presence in Utah at expos and trade shows, an interactive website identifying places to purchase its products in Utah, internet and telephone sales to Utah consumers, and a close relationship with its Utah distributors.

RPI regularly sends employees into Utah to solicit business at the St. George and Salt Lake Marathons. Although the exact time RPI began soliciting business at the marathons remains unclear, the RPI employee who oversees RPI's presence at these marathons, Patrick Materna, has worked for RPI since the early 1990s and has attended these marathons since at least 2003. RPI states Mr. Materna has attended such events in Utah 14 times. RPI attempts to characterize Mr. Materna as an independent contractor. But based on the record before the Court, and RPI's identification of Mr. Materna as RPI's Vice President of International Sales and Marketing, Mr. Materna appears, at a minimum, to serve as RPI's agent.

RPI has two internet websites, www.intracell.net and www.thestick.com. RPI maintains the first of these websites, www.intracell.net, which is not interactive. Mr. Materna runs the second website, www.thestick.com, which is interactive. Through this website, customers across the nation can place orders that, although first routed through a merchant processing company, RPI ultimately fulfills. Although RPI attempts to paint this second website as an independent business project maintained by Mr. Materna, the Court finds this website belongs to RPI. At the least, Mr. Materna runs this website on behalf of RPI as its agent.

"The application of personal jurisdiction standards to Internet usage presents interesting and novel issues." *Patriot Sys., Inc. v. C-Cubed Corp.*, 21 F. Supp. 2d 1318, 1324 (D. Utah 1998). In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), the Western District of Pennsylvania articulated a sliding scale helpful in examining personal jurisdiction based on a defendant's website activities:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that

> does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. at 1124 (citations omitted). A finding that a defendant's website activities fall on a particular side of *Zippo*'s sliding scale does not necessarily determine jurisdiction. Rather, Courts view *Zippo*'s sliding scale as a "heuristic adjunct to, rather than a substitute for, traditional jurisdictional analysis." *Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011); *see also Zippo*, 952 F. Supp. at 1123–24 (characterizing the sliding scale as a method for determining the "likelihood" a court will properly exercise personal jurisdiction). Although a defendant's website alone might not justify the exercise of general jurisdiction, it forms part of a collection of contacts that taken together demonstrate sufficiently continuous and systematic contacts as to subject the defendant to general jurisdiction. *See Wise*, 89 F. Supp. 2d at 1194 (citations omitted); 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1073.1, at 330 (3d ed. 2002).

As stated above, the Court attributes to RPI both www.intracell.net and www.thestick.com. The parties here provided minimal evidence concerning RPI's websites, but certain facts remain clear. Thestick.com is an interactive website that allows users, including residents of Utah, to purchase products from RPI. Documents submitted to the Court indicate RPI has made just over $35,000 in direct consumer sales to Utah between 2008 and 2011.[4] Even given the limited information available to the Court regarding RPI's internet activities, RPI

---

[4] The sales figures provided to the Court, which date back to 2002, do not differentiate between internet and telephone orders. This data shows approximately 400 such sales to Utah customers. The parties submitted these figures during summer 2012 and thus do not include figures for that year.

clearly lands on *Zippo*'s predictive sliding scale somewhere between "clearly do[ing] business over the internet" and the "middle ground . . . where a user can exchange information with the host computer." *See Zippo*, 952 F. Supp. at 1124. This District has previously found general jurisdiction proper where a defendant's highly interactive website encouraged users to purchase defendant's products and constituted a "commercial web site." *See Nutraceutical Corp. v. Vitacost.com, Inc.*, No. 2:05CV222DAK, 2006 WL 1493224, at *5 (D. Utah May 25, 2006). Like the defendant in *Nutraceutical*, one of RPI's websites—www.thestick.com—allows Utah residents to purchase RPI's products. At the least, RPI's "'interactive' Web site, together with other contacts, can meet the minimum jurisdictional threshold." *Wise*, 89 F. Supp. at 1194 (citations omitted).

Documents RPI produced in limited jurisdictional discovery also reveal a large number of sales to RPI's independent distributors in Utah. These documents show at least 22 Utah distributors of RPI products, accounting for over 900 sales, worth approximately $143,000 from 2002 through 2011, with a marked increase beginning in 2008.[5] RPI's Utah sales account for approximately 1.5% of its worldwide sales since 2000. RPI did not provide national sales figures for comparison, despite the Court's Order to allow discovery on this basis, and discovery requests seeking such information. RPI argues that such a small percentage of sales cannot provide a basis for general jurisdiction in Utah. Although Utah accounts for only a small percentage of RPI's worldwide sales, the number of Utah sales over the last decade—over 900 to distributors and approximately 400 directly to customers—demonstrates continuous and systematic contacts with Utah. *See Birddog Solutions, Inc. v. ATD-Am. Co.*, No. 8:06CV726, 2007 WL 1319536, at *3 (D. Neb. Apr. 4, 2007) (finding sales to nearly 600 Nebraska

---

[5] These figures do not include sales in Utah made at expos such as the St. George and Salt Lake City marathons.

individuals and entities over a period of five years to reflect continuous and systematic contacts despite Nebraska sales accounting for less than one-half of one percent of defendant's total sales).

RPI's relationship with its distributors goes beyond mere sales.  RPI has a hands-on relationship with its distributors.  Prospective dealers of RPI products must complete an application, which apparently includes a credit check and occasional telephone calls with credit references.  RPI often interviews potential distributors by phone.  RPI's relationship with its distributors continues after this application process to ensure distributors of RPI products adhere strictly to RPI's Manufacturer's Advertised Pricing ("MAP"), which RPI apparently actively monitors and enforces.  For example, RPI contacted Salt Lake Running Company, a Utah RPI distributor, upon learning Salt Lake Running Company had sold RPI products below-MAP.  Moreover, RPI prohibits its distributors from selling its products online through websites like eBay or Amazon.

According to RPI, the Tenth Circuit's decision in *Kuenzle* requires that a finding of general jurisdiction on the basis of a defendant's distributors' acts within the forum state must also include a finding of an agency relationship.  *Kuenzle*, however, involved facts distinguishable from the facts at issue.  In *Kuenzle*, the plaintiffs sought to hale the foreign defendant—a European manufacturer of ski bindings—into Court in Wyoming on a products liability case for bindings manufactured in Austria, purchased by the plaintiffs in Switzerland, and transported by the plaintiffs to Wyoming.[6]  *Kuenzle*, 102 F.3d at 456.  Plaintiffs sought to establish personal jurisdiction over the foreign defendant on the basis of the binding-maker's

---

[6] This Court notes that the *Kuenzle* fact pattern aptly falls under the description of "random, fortuitous, or attenuated contacts."  *See Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted).

relationship with its distributor in the United States, based in New York and subsequently Colorado, who placed product in Wyoming. *See id.* at 458. The Tenth Circuit ultimately held that where no direct contacts existed between the defendant and Wyoming, the plaintiffs had to show an agency relationship between the defendant and its distributor "in order for the distributor's contacts with Wyoming to support general jurisdiction." *Id.* at 459. Unlike the defendant in *Kuenzle*, RPI has had numerous direct contacts with Utah, as set forth previously, including with the very distributors selling its product.

Based on the totality of RPI's contacts with Utah, *see Envirotech Pumpsystems, Inc. v. Sterling Fluid Sys. (Schweiz) AG*, No. 2:99CV814K, 2000 WL 35459756, at *3 (D. Utah Nov. 16, 2000), and keeping in mind the minimal burden ICON bears to establish personal jurisdiction, *Kuenzle*, 102 F.3d at 456, the Court finds RPI has had "continuous and systematic general business contacts" with Utah sufficient for a finding of general jurisdiction, *OMI Holdings*, 149 F.3d at 1091 (internal quotation marks and citation omitted).

## 2. "Fair Play and Substantial Justice"

Having found sufficient minimum contacts to support general jurisdiction, the Court must next determine whether the exercise of personal jurisdiction over RPI in Utah comports with "'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *Id.* (citing *Asahi*, 480 U.S. at 113). At this stage, RPI must "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Dudnikov*, 514 F.3d at 1080

(quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)). This reasonableness determination looks to the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Trujillo*, 465 F.3d at 1221 (quotation omitted).

RPI essentially contends that because it does not have minimum contacts with Utah, this Court's exercise of personal jurisdiction would be unfair, and, in any event, ICON has not shown why litigating in Utah would be fair. But as set forth above, this Court has found RPI to have had sufficient minimum contacts with Utah, and at this stage RPI has the burden to demonstrate the unfairness of the Court's exercise of personal jurisdiction. RPI rests its only substantive fairness argument on its contention that Georgia—RPI's home state—has a greater interest in resolving this dispute than Utah. But RPI fails to explain why the home state of the trademark owner has a greater interest in resolving this dispute than the home state of the party potentially subject to suit for trademark infringement. The Court finds Utah's interest in this case at least as strong as Georgia's, and likely stronger. *See Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1206 (5th Cir. 1993) (finding exercise of personal jurisdiction reasonable and recognizing forum state's interest in declaratory judgment action involving two of forum state's corporate citizens as plaintiffs); *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*, 923 F. Supp. 950, 957 (S.D. Tex. 1996) (recognizing forum state's "strong interest in protecting its residents from nonresidents' claims of trademark . . . infringement"); *Wise*, 89 F. Supp. 2d at 1195 (noting in declaratory judgment action based on federal copyright and trademark laws that because case turned on federal law, the forum state's interest proved "at least as great" as that of defendant's home state).

In this case, RPI has failed to meet its burden to show why "these factors, separately or in combination . . . weigh definitively in favor of [RPI]." *See Dudnikov*, 514 F.3d at 1080. For example, RPI does not show how its defense "would be hindered by the territorial limits on . . . [this] court's power to subpoena relevant witnesses, or indeed hampered in any other significant way." *Id.* at 1081. In fact, many of the likely witnesses, ICON employees, will likely reside in Utah. Moreover, RPI's apparent willingness to litigate its trademark rights, as demonstrated in the cease-and-desist letter RPI sent to Gold's Gym International in Texas, "indicates a willingness to litigate in *some* federal court in the United States." *See id.* at 1080 (emphasis added). This Court's exercise of personal jurisdiction over RPI does not conflict with "traditional notions of fair play and substantial justice." *See Wise*, 89 F. Supp. 2d at 1195 (finding general jurisdiction proper where out-of-state defendant failed to show burden of litigating in forum was "insuperable"). The Court therefore concludes it can properly exercise general jurisdiction over RPI.

Because RPI has had sufficient minimum contacts with Utah and exercising personal jurisdiction would comport with "fair play and substantial justice," the Court must deny RPI's motion to dismiss for lack of personal jurisdiction.

## B. Venue

Having already found this Court properly may exercise personal jurisdiction over RPI, this Court finds that venue also lies in Utah.

The general venue statute provides for venue in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For venue purposes, courts will deem RPI to reside "in any judicial district in which [RPI] is subject to the court's personal jurisdiction with respect to the civil action in

question." 28 U.S.C. § 1391(c)(2). Because personal jurisdiction over RPI exists in Utah, the Court deems it to reside in Utah. *See id.* Thus, venue properly lies in Utah. 28 U.S.C. § 1391(b)(1).

## **CONCLUSION**

For the reasons set forth above, the Court DENIES RPI's Renewed Motion to Dismiss (ECF No. 28).

DATED this 22nd day of April, 2013.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge